UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EVELYN CUENCA,

                    Plaintiff,

v.                                                    3:14-CV-0859
                                                      (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                               OF COUNSEL:

LACHMAN, GORTON LAW FIRM                   PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O.  Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Evelyn Cuenca

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 14.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on March 29, 1959.  (T. 121.)  She completed the 11th grade. (T. 143.)  Generally, Plaintiff's alleged disability consists of a heart condition, back impairment, anxiety, and depression.  (T. 142.)  Her alleged disability onset date is June 15, 2011. (T. 121.)  Her date last insured is December 31, 2012.  (T. 150.)  She previously worked as a stock clerk and supervisor at a temporary employment agency. (T. 143.)

### B.      Procedural History

On June 21, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. .)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 7, 2013, Plaintiff appeared before the ALJ, Marie Greener.  (T. 33-54.)  On April 26, 2013, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 11-32.)  On June 17, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-27.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012 and Plaintiff had not engaged in substantial gainful activity since June 15, 2011. (T. 16.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, asthma, and chronic obstructive pulmonary disease. (*Id.*) The ALJ determined that Plaintiff's "trigger finger," hypertension, high cholesterol, high blood glucose levels, depression, anxiety, and adjustment disorder were non-severe impairments. (T. 18-19.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional limitations. (T. 22.)[1] Specifically, the ALJ determined that Plaintiff could perform:

> a job inside, but should not work outside due to her seasonal allergies, asthma, and chronic pulmonary disease. [Plaintiff] retain[ed] the ability to continuously understand, carry out, and remember simple instructions, respond appropriately to supervision, co-workers, and usual work situations and deal with changes in a routine work setting.

(*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-27.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]        Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

## A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly assess all of Plaintiff's severe impairments.  (Dkt. No. 11 at 3-9 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence.  (*Id.* at 9-11.)  Third, and lastly, Plaintiff argues the ALJ failed to consult a vocational expert ("VE"). (*Id.* at 11-12.)

## B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues Plaintiff's anxiety and depressive disorders were non-severe impairments.  (Dkt. No. 14 at 11-14 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ correctly assessed Plaintiff's RFC.  (*Id.* at 14-17.)  Third, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 17-19.)  Fourth, and lastly, Defendant argues Plaintiff retained the RFC to perform work which existed in significant numbers in the national economy.  (*Id.* at 19-21.)

## III.    RELEVANT LEGAL STANDARD

## A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.
> Under the cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner] must prove
> the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

**IV.     ANALYSIS**

**A.     The ALJ's Step Two Analysis**

At step two of the sequential evaluation process, the ALJ must determine

whether Plaintiff has a severe impairment that significantly limits her physical or mental

ability to do basic work activities.  *See* C.F.R. §§ 404.1520(c), 416.920(c).  Plaintiff bears

the burden of presenting evidence establishing severity.  *Taylor v. Astrue*, 32 F. Supp.

3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371,

2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have 'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013) ("A harmless error approach is consistent with the Second Circuits finding that step two severity determinations are to be used only to screen out de minimis claims."); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard

to whether any such impairment, if considered separately would be of sufficient severity").

Plaintiff argues the ALJ erred in his step two analysis because she determined Plaintiff's medically determinable mental impairments were non-severe. (Dkt. No. 11 at 3-9 [Pl.'s Mem. of Law].)  Plaintiff asserts that the medical opinion evidence supplied by consultative examiner Mary Ann Moore, Psy.D. and non-examining disability analysis, E. Kamin, support the conclusion that Plaintiff's depression and anxiety were severe impairments.  (*Id.*)  Plaintiff argues the ALJ failed to provide the medical opinion evidence supplied by Drs. Moore and Kamin proper weight and the ALJ did not follow the applicable Regulations in affording their opinions weight.  (*Id.*)  Plaintiff asserts the ALJ's error at step two was not harmless because her failure to find severe mental impairments at step two resulted in a faulty RFC determination.  (Dkt. No. 11 at 9-11 [Pl.'s Mem. of Law].)

Defendant counters that the ALJ properly determined that Plaintiff's anxiety and depression were non-severe impairments because the ALJ properly assessed the opinion evidence of Drs. Moore and Kamin, as well as treatment notations from Laura Saunders, LCSW and Plaintiff's testimony.  (Dkt. No. 14 at 12 [Def.'s Mem. of Law].)  Further, Defendant argues any error the ALJ may have made in her step two analysis was harmless because the ALJ found other severe impairments at step two and continued with the sequential analysis.  (*Id.* at 14.)

For the reasons stated herein, and in Defendant's brief, it is recommended that the ALJ's step two determination be upheld.  The ALJ properly assessed, and relied on, the medical opinion evidence in the record and Plaintiff's testimony in making her step

two determination that Plaintiff's mental impairments were non-severe. In the alternative, any error the ALJ may have made at step two was harmless because the ALJ found other severe impairments at step two, she thoroughly discussed Plaintiff's mental impairments elsewhere in her decision, and she clearly considered the effects of Plaintiff's mental impairments in her RFC analysis and determination.

Here, the ALJ determined Plaintiff's mental impairments were non-severe because they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (T. 19.) Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.") Therefore, if Plaintiff's mental impairments did not cause more than minimal limitations in Plaintiff's ability to perform the basic mental work activities as outline in the Regulations, then Plaintiff's mental impairments were non-severe.

The ALJ's evaluation of Plaintiff's mental impairments must reflect her application of the "special technique" set out in 20 C.F.R. §§ 404.1520a, 416.920a, which necessitates her consideration of "four broad functional areas" that include: "[a]ctivities

of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4), 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.' " *Kohler v. Astrue,* 546 F.3d 260, 266 (2d Cir.2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

In making this step two determination, the ALJ conducted an analysis of the four broad functional areas set out in Listing 12.00C. *See* 20 C.F.R., Part 404, Subpart P, App. 1. The ALJ concluded Plaintiff had mild limitations in the functional area of activities of daily living; mild limitations in the area of social functioning; mild limitations in the area of concentration, persistence or pace; and no episodes of decompensation. (T. 19-20.) In reaching her conclusion, the ALJ relied on Plaintiff's testimony and medical opinion evidence in the record. The medical evidence pertaining to Plaintiff's mental health treatment is outlined herein.

Plaintiff received mental health treatment from December 2011 to January 2012 from Kim Saunders, LCSW. (T. 313-316.)[2] Ms. Saunders noted Plaintiff had difficulty finding employment due to her criminal record. (T. 315.) She further noted Plaintiff managed her own finances, household, and shopping without assistance. (T. 316.) A

---

[2] Ms. Saunders treated Plaintiff on three occasions, December 27, 2011, January 10, 2012 and January 31, 2012. (T. 313.) Ms. Saunders notations indicated that Plaintiff successfully completed treatment at the New Horizons Outpatient Chemical Dependency Treatment Center; however, Plaintiff failed to initiate further treatment and had two "no shows" before being seen in December of 2011. (*Id.*) Plaintiff was discharged from treatment on August 13, 2012. (T. 322.) Discharge notation indicated Plaintiff cancelled or "no-showed" for four scheduled appointments and therefore was discharged. (*Id.*)

mental status examination conducted by Ms. Saunders indicated Plaintiff's mood was depressed and she had a history of hallucinations; however, she observed that Plaintiff's attire was appropriate, her hygiene was good, her attitude was cooperative, she was alert, her affect was normal, her speech was normal, her thought process was coherent, her memory was good, her intellect was average, and her insight and judgment were fair. (T. 316.)

The ALJ afforded Ms. Saunders's opinion "some weight." (T. 20.) The ALJ reasoned she personally treated Plaintiff and her opinion was "not contradicted" by any other treating source opinion. (*Id.*)

Dr. Moore conducted a consultative examination on October 19, 2011. (T. 269-274.) On examination, Dr. Moore observed that Plaintiff was cooperative, her thought process was coherent and goal directed, her affect was appropriate, her mood was euthymic, she was oriented, her attention and concentration were intact, her memory was mildly impaired, her cognitive functioning was below average, her insight was fair, and her judgment was fair. (T. 271-272.) Dr. Moore opined in a medical source statement that Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks under supervision, and consistently perform simple tasks. (T. 272.) She opined that Plaintiff did show "generally intact attention and concentration" and her memory was "mildly impaired;" however, Plaintiff had the ability to learn simplistic and complex tasks although she may need extra time to retain complex information. (*Id.*) She opined that Plaintiff had "difficulty dealing with stress," which "could cause problems with relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule." (T. 272-273.)

The ALJ afforded Dr. Moore's medical source statement "little evidentiary weight." (T. 21.) The ALJ reasoned the statement was based on Plaintiff's subjective complaints, rather than objective evidence because Dr. Moore's clinical findings were "benign." (*Id.*) The ALJ further reasoned that Plaintiff's reported symptoms were not corroborated in the medical record. (*Id.*)[3]

Dr. Kamin reviewed Plaintiff's medical record and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. (T. 295-311.) In the Psychiatric Review Technique from, Dr. Kamin opined Plaintiff had "mild limitations" in the area of activities of daily living, and "moderate limitations" in the areas of maintaining social functioning and maintaining concentration, persistence, or pace. (T. 305.)

In the Mental Residual Functional Capacity Assessment form, in the area of understanding and memory, Dr. Kamin specifically opined that Plaintiff was "not significantly limited" in her ability to: remember locations and work-like procedures; and understand and remember very short and simple instructions. (T.309.) Dr. Kamin opined that Plaintiff was "moderately limited" in her ability to understand and remember detailed instructions. (*Id.*) In the area of sustained concentration and persistence, Dr. Kamin opined Plaintiff was "not significantly limited" in her ability to: carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. (T. 309-310.) He opined that Plaintiff was "moderately limited" in her ability to: carry out detailed instructions;

_____

[3]     Of note, Plaintiff does not argue the ALJ erred in her credibility determination. Defendant argues the ALJ properly assessed Plaintiff's credibility. (Dkt. No. 14 at 17-19 [Def.'s Mem. of Law].) After a review of the record and the ALJ's decision, it is recommended, for the reasons outlined in Defendant's brief, that the ALJ's credibility determination be upheld.

maintain attention and concentration for extended periods; perform activities within a schedule, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 309-310.)

In the area of social interaction, Dr. Kamin specifically opined that Plaintiff was "not significantly limited" in her ability to: ask simple questions or request assistance; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (T. 310.)  Dr. Kamin opined that Plaintiff was "moderately limited" in her ability to: interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors.  (*Id.*)

In the area of adaption, Dr. Kamin specifically opined that Plaintiff was "not significantly limited" in her ability to travel to unfamiliar places or use public transportation.  (T. 310.)  Dr. Kamin opined that Plaintiff was "moderately limited" in her ability to: respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  (*Id.*)

In his functional capacity assessment, Dr. Kamin stated that Plaintiff maintained the ability to "understand, execute and remember simple instructions and work-like procedures."  (T. 311.)  In addition, Dr. Kamin stated Plaintiff could maintain attention and concentration for at least two hour intervals.  (*Id.*)  He opined Plaintiff could respond appropriately to supervisors, but due to her anxiety she may have difficulty working

closely with others. (*Id.*) He opined Plaintiff could adapt to changes in a routine work setting and make simple work related decisions. (*Id.*) Overall, Dr. Kamin stated Plaintiff was able to sustain a normal work day and week, and maintain a consistent pace. (*Id.*)

The ALJ afforded Dr. Kamin's opinion "little evidentiary weight." (T. 21.) The ALJ reasoned Dr. Kamin's opinion was not supported by objective medical evidence in the record. (*Id.*) Specifically, the ALJ noted that objective clinical findings in Dr. Moore's report and in Ms. Saunders's report were "generally benign."

Plaintiff argues the ALJ erred in concluding that Plaintiff had only "mild limitations" in the area of social functioning and the area of concentration, persistence or pace. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].)

The ALJ properly determined that Plaintiff had "mild limitations" in the area of social functioning based on Plaintiff's testimony, the observations of Dr. Moore and Ms. Saunders, and the opinion of Dr. Kamin. (T. 19, 20.)[4] Plaintiff testified that she had no problems with getting along with bosses, teachers, police, landlords or other people in authority. (T. 160.) Plaintiff further stated she never lost a job because of problems getting along with people. (T. 161.) Plaintiff testified that she attends Church on Sundays and spends time with her family every day. (T. 158.) Dr. Moore observed that Plaintiff was cooperative and her manner of relating and social skills were adequate. (T. 271.) Therefore, substantial evidence supported the ALJ's determination that Plaintiff had "mild limitations" in the area of social functioning.

---

[4] In her discussion of Plaintiff's ability to perform in the area of social functioning, the ALJ specifically relies on Plaintiff's testimony and the clinical observations of Dr. Moore (T. 19); however, the ALJ also stated in her step two determination that she considered the opinion evidence of Ms. Saunders, Dr. Moore and Dr. Kamin (T. 20).

In addition, the ALJ's determination that Plaintiff had "mild limitations" in the area of social functioning was supported by the clinical observations of Ms. Saunders, the opinion of Dr. Kamin, and Plaintiff's hearing testimony.  Ms. Saunders noted Plaintiff was cooperative and had average social skills.  (T. 326.)  Dr. Kamin noted that although Plaintiff had "moderate" limitations in the area of social functioning, this limitations did not preclude Plaintiff from performing the basic mental demands of work in the context of "social functioning;" specifically, Dr. Kamin opined Plaintiff could perform routine simple work, respond appropriately to supervisors, and sustain a normal workday/week. (T. 310-311.)  During the hearing, Plaintiff testified that her physical impairments prevented her from working and made no mention of work restraints due to mental impairments.  (T. 41-46.)  The ALJ inquired about her mental impairments; however, Plaintiff did not testify that her mental impairments were disabling. (T. 46.)

Although Dr. Moore stated that Plaintiff "could have problems with relating adequately with others," (T. 272) the ALJ properly afforded this statement little weight as it was based on Plaintiff's subjective complaints and ultimately it was not supported by the objective medical observations of Ms. Saunders nor was it supported by Plaintiff's testimony elsewhere in the record.  (T. 21.)  Further, as stated by the ALJ, Dr. Moore's own clinical observations did not support greater social limitations.  (*Id.*)  To be sure, a doctor's reliance on subjective complaints does not undermine his opinion of the claimant's functional limitations.  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003).  However, the ALJ ultimately reasoned that Dr. Moore's opinion was not supported by objective evidence, which was proper under the Regulations.  20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

Therefore, the ALJ's determination that Plaintiff had "mild limitations" in the area of social functioning was supported by substantial evidence in the record, namely Plaintiff's own testimony that she had no limitations in this area, the clinical observations of Dr. Moore and Ms. Saunders, the opinion of Dr. Kamin. None of the medical opinions in the record would prevent Plaintiff from performing the basic mental demands associated with social functioning of unskilled work.

The ALJ also properly determined that Plaintiff had "mild limitations" in the area of concentrations, persistence or pace based on Plaintiff's testimony, the clinical observations f Dr. Moore and Ms. Saunders, and the opinion of Dr. Kamin. (T. 19, 20.) Plaintiff testified that she had no problems paying attention. (T. 160.) Dr. Moore observed Plaintiff's attention and concentration to be intact. (T. 272.) Dr. Moore noted Plaintiff's memory was "mildly impaired;" however, Dr. Moore ultimately opined Plaintiff could follow simple directions and instructions, perform simple tasks, and learn simplistic tasks. (*Id.*) In addition, although Dr. Kamin found that Plaintiff had "moderate limitations" in this area, he ultimately opined that despite those moderate limitations, Plaintiff was able to understand, execute, and remember simple instructions and work-like procedures; maintain attention and concentration for two hour segments; adapt to changes in a routine work setting; make simple work related decisions; and sustain a normal work day/week and maintain a consistent pace. (T. 311.) Therefore, substantial evidence supported the ALJ's determination that Plaintiff had mild limitations in the area of concentration, persistence or pace. None of the opinions provided would preclude Plaintiff from performing the basic mental demands of unskilled work which requires a

plaintiff to understand, remember, and carry out simple instructions.  20 C.F.R. §§ 404.1521(b)(3), 416.921(b)(3), *see also* SSR 85-15 (S.S.A. 1985)

In the alternative, any error the ALJ may have made in her step two analysis was harmless because the ALJ thoroughly discussed the medical evidence regarding Plaintiff's mental impairments throughout her decision.  In her step two analysis, the ALJ outlined the medical evidence in the record, and Plaintiff's testimony, regarding limitations imposed by her mental impairments.  (T. 20-22.)  The ALJ afforded weight to the medical opinions and provided a discussion of her reasoning for the weight afforded in accordance with the Regulations.  (T. 20-22.)

Elsewhere in her decision, the ALJ discussed Plaintiff's mental impairments.  In making her RFC determination the ALJ stated that although she determined Plaintiff's mental impairments to be non-severe, "any limitations reasonably attributed to these conditions" were reflected in her RFC determination.  (T. 23.)  Therefore, any error the ALJ may have committed at step two was harmless because the ALJ clearly acknowledged, discussed, and considered Plaintiff's mental impairments throughout her decision.  *See Chavis,* 2010 WL 624039, at *12 ("[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis.")

## B.    The ALJ's Mental RFC Determination

Plaintiff's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.   Although any error the ALJ may have made at step two was harmless, in making an RFC determination the ALJ

must consider all of Plaintiff's impairments, including impairments that are non-severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Plaintiff essentially argues that the ALJ failed to provide, at step two and in her RFC analysis, a discussion or analysis of mental limitations imposed by Drs. Moore and Kamin, which had the ALJ properly assessed would have resulted a finding of a severe impairment at step two and greater functional limitations in the RFC. (Dkt. No. 11 at 3-11 [Pl.'s Mem. of Law].) As discussed, the ALJ's step two analysis was supported by substantial evidence, and any error at step two would be harmless. However, the ALJ also provided a discussion of Plaintiff's mental impairments in her RFC analysis and included appropriate limitations in her RFC determination. Regarding her mental RFC, Plaintiff specifically cites to Drs. Moore and Kamin's opinions that she had limitations in her ability to respond appropriately to supervision, co-workers and usual work situations; and her ability to deal with changes in a routine work setting, ultimately claiming that the ALJ failed to make a finding regarding Plaintiff's ability to maintain a regular work schedule. (Dkt. No. 11 at 9-11 [Pl.s Mem. of Law].)[5]

Plaintiff argues the ALJ erred in affording "little evidentiary weight" to Drs. Moore and Kamin opinions, specifically that the ALJ failed to follow the appropriate Regulations and substituted her own lay opinion. (*Id.* at 6-7, 9-11.) The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

---

[5] Plaintiff does not argue that the ALJ erred in her physical RFC determination.

As stated herein, the ALJ properly afforded Dr. Moore's opinion "little evidentiary weight." (T. 21.) Plaintiff argues the ALJ erred in discounting Dr. Moore's opinion because the opinion appeared to be based on Plaintiff's subjective complaints. (Dkt. No. 11 at 6 [Pl.'s Mem. of Law].) Plaintiff asserts this was the "only stated reason" given by the ALJ in support of his weight determination. (*Id.*) However, what the ALJ actually stated was Dr. Moore's opinion appeared to be based on Plaintiff's subjective complaints "rather than the objective evidence." (T. 21.) The ALJ discussed the objective medical evidence, such as mental status examinations, that she determined did not support all the limitations imposed by Dr. Moore. (*Id.*) Therefore, the ALJ properly adhered to the Regulations in affording Dr. Moore's opinion "little weight" because it was not supported by the objective medical evidence in the record, including Dr. Moore's benign findings, and because it was based on Plaintiff's subjective complaints. *Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) ("The ALJ's determination to give Dr. Shapiro's opinion little weight was proper because the opinion was based entirely on Plaintiff's subjective statements and was inconsistent with the doctor's benign examination findings."); 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

The ALJ also properly afforded Dr. Kamin's opinion "little evidentiary weight." (T. 21.) The ALJ reasoned Dr. Kamin's opinion was not supported by objective medical evidence in the record. (T. 21-22.) Once again, the ALJ relied on objective medical evidence, specifically the normal mental status examinations, in the record. (*Id.*)

The ALJ's mental RFC determination was supported by substantial evidence in the record. Contrary to Plaintiff's assertion, the ALJ did not substitute her own lay

opinion for that of medical evidence in the record. (Dkt. No. 11 at 10 [Pl.'s Mem. of Law].) The ALJ clearly relied on the medical observations and opinions of Dr. Moore, Dr. Kamin, Ms. Saunders, and Plaintiff's testimony in her step two and RFC determinations. Although the ALJ afforded Drs. Moore and Kamin "little weight," the ALJ's mental RFC determination clearly draws from their opinions. Dr. Moore essentially opined Plaintiff could perform substantially all of the basic functions of simple, routine, unskilled work. (T. 272-273.) Dr. Kamin's mental RFC report also indicated that Plaintiff could perform substantially all of the basic mental functions required for unskilled sedentary work. (T. 311.) Dr. Kamin found "moderate limitations" in Plaintiff's ability to maintain social functioning and ability to maintain concentration, persistence, or pace; however, Dr. Kamin opined that these "moderate limitations" did not impede on Plaintiff's ability to perform basic mental work activities. (*Id.*) Dr. Kamin opined that despite "moderate limitations," Plaintiff was able to maintain attention and concentration for two hour segments; respond appropriately to supervisors; adapt to changes in a routine work setting; make simple work related decisions; and ultimately sustain a normal work day/week and maintain a consistent pace. (*Id.*)

In addition, a finding that Plaintiff was "mildly" or "moderately" impaired in functional areas would not preclude Plaintiff's ability to perform the basic mental demands of unskilled work. *See Sipe v. Asture*, 873 F.Supp.2d 471 (2012) (holding that plaintiff could perform unskilled work based on the testimony of plaintiff, as well as medical opinions of consultative examiner and non-examining state agency examiner who found mild and moderate limitations in all relevant areas); *see also Ellis v. Comm'r Soc. Sec.*, No. 11-CV-1205, 2012 WL 5464632 (N.D.N.Y. Sept. 7, 2012) ("Moderate

limitations in a few of the categories do not rise to the level of substantial loss in the ability to perform the demands outlined in SSR 85-15.")

In sum, the ALJ's step two and RFC determinations were supported by substantial evidence in the record. The ALJ relied on the medical evidence provided by Plaintiff's treating mental health counselor, Ms. Saunders, consultative examiner, Dr. Moore, non-examining State agency consultant, Dr. Kamin, and Plaintiff's own testimony. The ALJ adhered to the Regulations in weighting the opinion evidence in the record and her ultimate RFC determination was based on medical opinion evidence and clinical observations. Substantial evidence supported the ALJ's determination that Plaintiff retained the ability to perform the basic mental demands of unskilled work. Therefore, remand is not recommended.

### C.     The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her RFC, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's

ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Here, the ALJ determined that given Plaintiff's age, education, work experience and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 26.)

Plaintiff argues that given Plaintiff's "significant non-exertional impairments" the ALJ was obligated to consult with a VE to assess the erosion of the occupational base. (Dkt. No. 11 at 11-12 [Pl.'s Mem. of Law].) However, as outlined herein, the ALJ properly assessed Plaintiff's mental impairments at step two and in her RFC determination. The ALJ's step five determination took into consideration Plaintiff's mental and physical non-exertional limitations and provided a thorough discussion of the effects the limitations would have on the occupational base. (T. 26-27.)[6] As discussed herein, Plaintiff's mental limitations do not prevent Plaintiff from performing the basic mental demand of unskilled work. Further, the ALJ properly relied on SSR 83-14 in concluding that Plaintiff's environmental limitations would have little or no effect on

---

[6]     Plaintiff cites to *Long v. Colvin*, 3:12-CV-578, 2013 WL 3051601 (N.D.N.Y. June 17, 2013) in support of her argument; however, Plaintiff's reliance is misplaced. (Dkt. No. 11 at 12 [Pl.'s Mem. of Law].) In *Long* the Court concluded that the ALJ erred in his step five determination because the ALJ made no mention of plaintiff's environmental limitations. Here, the ALJ thoroughly discussed and analyzed Plaintiff's non-exertional limitations at step five. (T. 27.)

the occupational base.  (T. 27.)[7]  Therefore, the ALJ did not err at step five in relying on the Grids in making her determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

---

[7]       Although SSR 83-14 does not specifically address the effect of an inability to work outside on the occupational base of light work, SSR 83-14 does state:

> Working conditions (environmental demands) which a person may not be able to tolerate as a result of an impairment include exposure to extremes of heat or cold, humidity, noise, vibration, hazards, fumes, dust, and toxic conditions. . . . [F]unctional ability may not be impaired by an environmental restriction (e.g., a person may be able to do anything so long as he or she is not near dangerous moving machinery, on unprotected elevations, or in contact with certain substances to which he or she is allergic).  SSR 83-14 (S.S.A. 1983), 1983 WL 31254, at *2.

SSR 83-14 provides the following example of an non-exertional environmental limitation which would limit a plaintiff to indoor work:

> Ragweed grows outdoors and its pollen is carried in the air, but the overwhelming majority of sedentary jobs are performed indoors.  Therefore, with the possible exclusion of some outdoor sedentary occupations which would require exposure to ragweed pollen, the unskilled sedentary occupational base is not significantly compromised. *Id.*, at *4.

Therefore, even if the restriction to indoor work had an effect on the occupational base of light work, which is doubtful because it is reasonable to assume most work is performed indoors, the occupational base of sedentary work would not be significantly compromised.  The ability to perform light work encompasses the ability to perform sedentary work.  20 C.F.R. §§ 404.1567(b), 416.967(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")  Plaintiff did not argue the ALJ erred in her physical RFC determination that Plaintiff could perform the exertional requirements of light work.  In addition, the ALJ's RFC determination held that Plaintiff could sit for six hours in an eight hour workday; therefore, there were no additional restrictions in the ALJ's RFC determination that would prevent Plaintiff from performing sedentary work.

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:          April 18, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge